

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
THEATRE ROW PHASE II ASSOCIATES,      :

         Defendant-Appellant,      :    MEMORANDUM
                                                        DECISION AND ORDER
                                                              09 cv 06946 (GBD)
         - against -            :

H & I INC.,                                         :

         Plaintiff-Appellee.      :
------------------------------------------------------------------- x

GEORGE B. DANIELS, United States District Judge:

      Appellant Theatre Row Phase II Associates ("Theatre Row") appeals from the Final Order of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") dated June 23, 2009. The Bankruptcy Court granted a claim by Appellees H & I, Inc. ("H&I") for a two-percent (2%) interest in certain distributions in Theatre Row's Chapter 11 Bankruptcy case ("H&I claim") and dismissed all defenses and objections asserted by Theatre Row as precluded under the doctrines of *res judicata* and collateral estoppel. Theatre Row appeals on the ground that its objections and defenses were neither litigated nor decided in the state court proceeding. Based upon this asserted error, Theatre Row seeks to have this Court reverse the Bankruptcy Court's Final Order and remand this matter to the Bankruptcy Court for further proceedings.

## MATERIAL FACTS & PROCEDURAL HISTORY

      On or about June 27, 1980, Theatre Row entered into an Assignment and Assumption of Lease agreement with the City of New York, as landlord, and 42nd Street Development Corporation, as tenant. Ex. 12, Debtor's Opposition to Notice of Motion by H&I, Inc. for an

1

Order Determining its Claim to be Allowed and Directing Payment of that Claim, ¶ 4. The leased property consisted of the entire block in Manhattan bounded by West 42nd Street to the north, Tenth Avenue to the west, West 41st Street to the south, and Dryer Avenue to the east ("Property"). Id. Theatre Row succeeded to the rights and obligations of 42nd Street Development Corp. ("Ground Lease"), including a fixed price purchase option for purchase of the Property from the City for the sum of $100,000. Id. Theatre Row's interest in the Ground Lease constituted substantially all of the assets of Theatre Row since 1980. Id.

At some point between 1980 and 1986, a dispute arose between Theatre Row and a long-time principal tenant, National Recording Studio ("NRS"). Id. ¶ 6. The parties reached a settlement agreement under which Theatre Row agreed to give a 2% interest in the Limited Partnership known as Theatre Row Phase II Associates to NRS or a designee selected by Mr. Peter Lustig, one of several interested principals in NRS. Id. ¶ 22 and Exhibit B attached thereto. In exchange, the parties settled all outstanding grievances and executed a Lease Modification Agreement on March 13, 1986. Id. Pursuant to that agreement, Theatre Row directly assigned a 2% interest to H&I, a corporation in which Mr. Lustig was the sole shareholder. Id.

Sixteen years later, in 2002, NRS defaulted in its rent payments to Theatre Row and abandoned the premises. Id. ¶ 12. Theatre Row obtained a judgment against NRS for rent in the amount of $1,745,781.84 plus post-judgment interest increasing the total to over $2 million. Id. ¶ 19 and Exhibit A attached thereto. Theatre Row has been unable to attach any assets of NRS to enforce the judgment. Id. ¶ 20.

On January 10, 2003, Theatre Row filed for Chapter 11 bankruptcy by filing a petition for reorganization with the Bankruptcy Court. Ex. 1, Voluntary Petition (Chapter 11). Theatre

Row was forced to sell the Ground Lease, its sole asset, in order to generate sufficient funds to pay its creditors. Ex. 12, ¶ 20. Theatre Row alleges that NRS' failure to pay millions of dollars in rent was the direct and proximate cause of Theatre Row's need to file bankruptcy. Id. On June 9, 2003, H&I timely filed a proof of claim seeking payment of an "unliquidated [2%] interest in the property of debtor," estimated to be in excess of $3 million. Ex. 11, Motion to Allow Claim of H&I, Inc., ¶ 8-9 and Exhibit A attached thereto. On February 4, 2004, Theatre Row commenced a Special Proceeding pursuant to N.Y. CPLR § 5225(b) against H&I in New York State Supreme Court. Ex. 16, Affidavit in Opposition to Motion to Allow Claim of H&I. Inc., ¶ 4; Ex. 15, Supplemental Declaration in Support of Motion to Allow Claim of H&I, Inc., at 16-24. Theatre Row sought a declaratory judgment that the 2% interest held by H&I was the property of NRS in the hands of a third-party and thus could be used to satisfy the NRS Judgments. Ex. 11, at Exhibit C, Decision and Order. Theatre Row challenged the validity of its direct assignment of the 2% interest to H&I in 1986. Id. It argued that because H&I never provided consideration for the 2% interest, NRS had remained the rightful owner of the property. Id. Theatre Row further argued that NRS could have assigned its 2% interest only upon receipt of full and fair consideration. Id.

On August 2, 2006, the state court entered a Decision and Order dismissing Theatre Row's § 5225(b) proceeding and denying its motion for summary judgment. Id. The state court found that (a) the assignment, which was in exchange for "$1.00 and other good and valuable consideration" was valid; (b) "the assignment executed was between . . . [Theatre Row] and [H&I] directly"; (c) "[Theatre Row] made the transfer in 1986 to [H&I] as part of a global settlement with knowledge of all parties and facts"; and (d) the settlement was unchallenged and deemed valid by all parties for eighteen years. Id. The state court concluded that "there has

3

been no fraud and [Theatre Row] does not have a superior right against H&I." Id. On October 18, 2007, the First Department of the Appellate Division affirmed the Decision and Order. Id., at Exhibit E.

On January 22, 2008, H&I filed a motion in the Bankruptcy Court to allow its claim for 2% of certain Theatre Row distributions. Ex. 11. On March 13, 2008, Theatre Row filed its opposition, asserting objections and defenses such as unclean hands, piercing the corporate veil, unjust enrichment, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing.[1] Exs. 12; 13, Response to Debtor's Opposition; 15-16. After hearing oral arguments on March 18, 2008, and September 4, 2008, the Bankruptcy Court entered an Order on October 3, 2008 allowing H&I's Claim and dismissing Theatre Row's objections for the reasons stated on the record at the September hearing ("Allowance Order"). Ex. 12; 14, Transcript of Hearing Held on 3/18/08; 19, Transcript of Hearing Held on 9/4/08; 21, Order Signed Determining H&I Inc.'s Claim to Be Allowed. The Bankruptcy Court explained that the state court proceeding had *res judicata* and collateral estoppel effect on Theatre Row's objections and defenses. Specifically, the Bankruptcy Court stated, "I think what [Theatre Row] is asking me to do is to in essence allow him to go behind [the State Court's] final judgment. . . . I think that [Theatre Row] is attempting to have me . . . relitigate what they have already litigated in the state court and what there was an adverse ruling on." Ex. 19, at 6, 9-10.

After further hearings and motions regarding Theatre Row's failure to comply with the Allowance Order and the amount of H&I's 2% interest, the Bankruptcy Court entered the Final Order fixing H&I's Claim in the Chapter 11 case on June 30, 2009. Ex. 38, Final Order Not

---

[1] For the purposes of this appeal, the Court accepts Theatre Row's opposition as a timely objection to H&I's Claim. The Bankruptcy Court resolved this issue, and neither party appealed that ruling.

4

Signed. The Final Order, which is the subject of the instant appeal, stated that, upon the various prior papers and proceedings, including the Allowance Order: (a) H&I's claim was fixed in the amount of 2% of certain Theatre Row distributions; (b) provision was made for H&I's claim with respect to future Theatre Row distributions; and (c) provision was made for supersedes bond or $1,809,200 being held in escrow in substitute for supercedeas bond. Ex. 39, Proposed Counter Order Signed.

## JURISDICTION & STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from final orders issued by bankruptcy courts pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001(a). "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013. The Bankruptcy Court's legal conclusions are subject to *de novo* review, factual findings are subject to a clearly erroneous standard, and decisions based on equitable relief are subject to an abuse of discretion review. See Jackson v. Novak (In re Jackson), 593 F.3d 171, 176 (2d Cir. 2010) ("[I]ndependently review the factual determinations and legal conclusions of the bankruptcy court, accepting the bankruptcy court's factual findings unless they are clearly erroneous. . . .") (quoting In re Momentum Manufacturing Corp., 25 F.3d 1132, 1136 (2d Cir. 1994) (internal quotation omitted)); Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.), 365 B.R. 401, 407 (S.D.N.Y. 2007); In re Adelphia Communications Corp., 2006 U.S. Dist. LEXIS 37112, at *6 (S.D.N.Y. June 6, 2006).

## PRECLUSIVE EFFECT OF STATE COURT PROCEEDING

Theatre Row argues that the Bankruptcy Court erred in dismissing its objections and defenses to the H&I claim because the state court's § 5225(b) special proceeding did not have

*res judicata* or collateral estoppel effect. Theatre Row identifies <u>Julien J. Studley, Inc. v. Lefrak</u>, 66 A.D.2d 208 (N.Y. App. Div. 1979), <u>aff'd</u>, 425 N.Y.S.2d 65 (1979), as binding precedent that "a § 5225(b) special proceeding raises a different issue than an action asserting claims based on other legal theories such as piercing the corporate veil, agency arguments, and the like," and thus "neither action would have res judicata or collateral estoppel effect as to the other." Appellant's Brief at 18. Theatre Row contends that the bankruptcy action involved different issues from the special proceeding because none of its objections and defenses to allowing H&I's claim were either raised or ruled upon in state court. In particular, (a) H&I never plead any claim seeking a judgment as to the validity and enforceability of the 2% interest; (b) Theatre Row never raised its defenses to the validity and enforceability of the 2% interest, including but not limited to issues concerning the piercing of the corporate veil and equitable defenses; and (c) no judgment was ever issued with respect to the validity and enforceability of the 2% interest. <u>Id.</u> at 12.

Contrary to Theatre Row's assertions, a § 5225(b) special proceeding is not *as a matter of law* immune from these preclusion doctrines when previously unasserted veil piercing or agency issues are raised in another action. In <u>Lefrak</u>, the court allowed Julian J. Studley Inc., the judgment creditor, to bring a § 5225(b) proceeding against Lefrak after failing to establish in a prior proceeding that Lefrak was a judgment debtor based upon corporate veil piercing and agency theories. The first litigation established "the debts owing to the petitioner from the corporations and determined that [the individual defendant] Lefrak was not liable for those debts on the grounds that the corporations were not his agents and the corporate veils could not be penetrated." <u>Lefrak</u>, 66 A.D.2d at 217. The second litigation enforced the judgments against the corporate assets. "Lefrak [was] sued because he is one of the transferees of those corporate assets" in a § 5225(b) proceeding, not because he was a debtor. The court did not hold that a

second action based on corporate veil piercing, agency, or any other unasserted legal theory can always be brought separate from a § 5225(b) proceeding. Rather <u>Lefrak</u> stands for the proposition that once the debtor is determined, the judgment creditor can proceed against a transferee of the judgment debtor's assets pursuant to a CPLR § 5225(b) proceeding.[2]

Accordingly, it is necessary to apply the legal standards for the preclusion doctrines to the objections and defenses raised in Bankruptcy Court regarding the validity and enforceability of H&I's 2% interest.

### A. Collateral Estoppel

"[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." <u>Leather v. Eyck</u>, 180 F.3d 420, 424 (2d Cir. 1999) (quoting <u>Schiro v. Farley</u>, 510 U.S. 222, 232 (1994)). Under New York law, collateral estoppel bars subsequent litigation where: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." <u>Boguslavsky v. Kaplan</u>, 159 F.3d 715, 720 (2d Cir. 1998) (citations omitted). "The party seeking the benefit . . . bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues."

---

[2] Furthermore, the present case is distinguishable from <u>Lefrak</u> and thus does not command the same outcome. Theatre Row's litigation against NRS regarding the defaulted rent established NRS as the debtor. The special proceeding in state court, however, failed to establish H&I as NRS's transferee, thus preventing Theatre Row from satisfying its judgment against the 2% interest held by H&I. Therefore, Theatre Row has already benefitted from "the full remedies afforded by <u>Studley</u>, including a special proceeding against H&I as NRS's alleged transferee." Appellee's Br. at 13.

7

Khandhar v. Elfenbein, 943 F.2d 244, 247 (2d Cir. 1991) (citing Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456 (N.Y. 1985)).

The validity issue was raised, litigated, and necessarily decided in state court. CPLR §5225(b) provides for the satisfaction of judgments by the judgment creditor against an individual other than the judgment debtor "who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee." CPLR §5225(b). The state court must first determine whether "the judgment debtor has an interest in the property the creditor seeks to reach." See Beauvais v. Allegiance Secur., Inc., 942 F.2d 838, 840 (2d Cir. 1991) (quoting Key Lease Corp. v. Manufacturers Hanover Trust Co., 499 N.Y.S.2d 66, 68 (N.Y. App. Div. 1986)) (internal quotation marks omitted); see also CPLR §5225(b). Then the state court must "make one of two findings: it must find either that the judgment debtor is entitled to the possession of such property, or it must find that the judgment creditor's rights to the property are superior to those of the party in whose possession it is." Beauvais, 942 F.2d at 840-41.

In the §5225(b) special proceeding, Theatre Row argued that (a) the 1986 assignment to H&I was invalid and thus the 2% interest belonged to NRS and that (b) H&I was the transferee of NRS's 2% interest. To determine whether NRS, the judgment debtor, had any interest in the 2% interest held by H&I, the dispositive issue was the validity of the 1986 assignment. Based on the facts, there were two possibilities as to the valid owner of the 2% interest – NRS or H&I, and any interest NRS could have had in the 2% interest arose or dissipated during the 1986 transaction. Thus the state court necessarily resolved whether H&I's 2% interest was valid and enforceable in determining that the assignment was valid and NRS was not the valid owner. See

8

Ex. 19, at 12 ("I don't understand what Judge Tollup could have decided, having read his decision, other than that there was no property of NRS that H&I was holding."). Therefore, the validity of H&I's 2% interest was an issue in the state court litigation.

The validity issue was decided by a final judgment on the merits. The state court found that "NRS did not have an interest in the 2% Interest distributions owned by H&I"; the assignment to H&I was valid; and "H&I was not a transferee of money or person[al] property from the judgment debtor[, NRS,] since the 2% Interest was acquired directly from [Theatre Row] by assignment." Ex. 11, at Exhibit C, at 4. The state court also found that "[Theatre Row] does not have a superior right against [H&I]." Id.

Finally, Theatre Row was a party in the state court litigation and had an ample opportunity to litigate the validity issue. Theatre Row concedes that the only reason it seeks to oppose H&I's Claim is because it has yet to satisfy the judgment against NR:

> COURT: [W]hat you're saying to me is that because NRS owes you money - - and that's undisputed - - that those judgments remain unsatisfied, that you ought to be able to cause the H&I claim to be disallowed because there is a common overlapping ownership between H&I and NRS.
>
> MR. BURGER: That is the essence of our claim, yes.

Ex. 19, at 12. Theatre Row never alleges any hindrance, such as a procedural rule or a decision by the presiding judge, to its presentation of evidence, case law, or legal arguments in the state court proceeding. As aptly stated by the Bankruptcy Court, the reality of the situation is that "Theatre Row tried to have the claim disallowed in the state court in a certain fashion and it didn't work." Id. at 20.

Accordingly, collateral estoppel precluded Theatre Row from relitigating the validity of H&I's 2% interest in Bankruptcy Court. The Bankruptcy Court properly precluded Theatre Row

9

from raising any objections and defenses that challenged the validity of H&I's 2% interest –
namely, piercing the corporate veil and breach of the implied covenant of good faith.

## B.     *Res Judicata*

*Res judicata* "provides that '(1) final judgment on the merits of an action (2) precludes the parties or their privies (3) from relitigating issues that were or could have been raised in that action.'" (citation omitted)). Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997); see also Allen v. McCurry, 449 U.S. 90, 94 (1980); Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000); Torres v. City of N.Y., 154 F. Supp. 2d 814, 817 (S.D.N.Y. 2001). With respect to the third prong, the court must consider "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Monahan, 214 F.3d at 289 (quoting NLRB v. United Techs. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983)). Failure to present different legal theories or even request dissimilar or additional relief, absent formal barriers, does not preserve the underlying issue when raised in subsequent litigation unless "the initial forum did not have the power to award the full measure of relief sought in the later litigation." Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986); EM Ltd. v. Republic of Argentina, 2010 U.S. Dist. Lexis 34613 (S.D.N.Y. Apr, 7, 2010) (citing Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

To the extent that Theatre Row's objections and defenses to the enforceability of H&I's 2% interest "arise out of the same factual grouping" as the validity issue and thus "are deemed to be part of the same [claim]," res judicata precluded Theatre Row from further litigating them. Davidson, 792 F.2d at 278. The state court entered a final judgment on the merits of Theatre Row's right to enforce its judgment against H&I's 2% interest. Ex. 11, at Exhibit C. The same

10

parties in that litigation – Theatre Row and H&I – were present in the bankruptcy action. As previously discussed, Theatre Row litigated the validity of H&I's 2% interest, precluding piercing the corporate veil and breach of the implied covenant of good faith. The issue is whether Theatre Row could have raised its objections and defenses to the enforceability of H&I's 2% interest – namely, breach of fiduciary duty, unclean hands, and unjust enrichment – during the state court litigation. Certainly, it could have.

First, the same transaction is at issue in the bankruptcy action as in the state court litigation. In state court, Theatre Row sought to enforce the NRS judgments for back rent against H&I's 2% interest. Theatre Row argued that H&I was not the proper owner of the 2% interest because H&I failed to provide full and fair consideration in exchange for the assignment. The transaction at issue was the 1986 assignment from Theatre Row to H&I. In Bankruptcy Court, Theatre Row sought to avoid its obligation to pay H&I a percentage of certain partnership distributions. Theatre Row argued that H&I's principals should not be allowed to reap the benefits of their wrongdoing as NRS's principals. The transaction at issue was again the 1986 assignment since Theatre Row challenged the validity of H&I's 2% interest and H&I's entitlement to a distribution.

Second, Theatre Row would have relied in Bankruptcy Court on the same evidence presented in state court. The state court found that Theatre Row assigned the 2% interest to H&I "with knowledge of all parties and facts." Ex. 11, at Exhibit C, at 5. In particular, Theatre Row knew – and does not dispute that it knew – that Mr. Lustig was one of several interested principals in NRS; Mr. Lustig selected H&I as the designee; Mr. Lustig formed H&I and had 100% stock ownership; and Mr. Lustig's interest in H&I passed to his wife Laura upon his death in March 2002. Theatre Row continued to allege these exact same facts in Bankruptcy Court as

11

a basis to disallow H&I's claim.[3]  Theatre Row does not rely upon different or additional factual allegations in the bankruptcy action or now on appeal, nor does Theatre Row offer newly discovered facts or evidence to bolster its previous factual allegations.  Therefore, the same evidence is needed to support both proceedings, and the same facts are essential in the bankruptcy action and the special proceeding.

Additionally, there were no formal barriers in the state court litigation to Theatre Row raising the defenses and objections regarding enforceability it sought to raise in the bankruptcy action.  A special proceeding pursuant to CPLR § 5225(b) is a plenary action; "any issue of fact arising in the proceeding can be tried and adjudicated in the proceeding itself," thus invalidating any need to commence a separate plenary action to resolve the dispute.  See, e.g., David D. Siegel, CPLR §5225, Practice Commentary C5225:6 (McKinney 1978).  A special proceeding also permits the assertion of various legal theories as plausible grounds upon which to obtain the requested relief.  See O'Brien-Kreitzber & Assoc. V. K.P., Inc., 630 N.Y.S.2d 76, 77 (N.Y. App.

---

[3] Under the argument heading "The H&I Claim Should be Allowed in The Amount of Zero Dollars," Theatre Row argued that:

> Harold Lustig controlled NRS and H&I at the time that he directed TRA-II to assign the 2% Interest in Distributions to H&I as NRS's designee.  Harold Lustig continued to own and control H&I until his death in or about 2002.  The H&I Claim was filed in this case by Laura Lustig as executor of the estate of Harold Lustig, with an address c/o Andre Lustig, Harold Lustig's son.  Andre Lustig was the President of NRS in 2002 when NRS abandoned the NRS Premises, walking away from millions of dollars in unpaid rent owed to TRA-II, and plunging TRA-II into bankruptcy that required the sale of TRA-II's sole asset.
>
> The Lustig family, through its control of NRS, has already reaped a windfall of more than $2 million at TRA-II's expenses by walking away from its rent obligations to TRA-II and concealing whatever assets NRS may have had, which has left TRA-II with uncollectible judgments against NRS. Having wrongful forced the bankruptcy and liquidation of TRA-II, the Lustig family now also wants to enjoy a further windfall by participating in the distribution of the funds received from the liquidation of TRA-II's sole asset. . . .

Div. 1995). Absent any express statutory language or case law to the contrary, no formal barriers exist barring a judgment creditor from asserting all and every grounds supporting its challenge of the ownership interest of a third party. See e.g., Eckhaus v. Blauner, 1997 WL 362166, at *5 (S.D.N.Y. Jun. 25, 1997); Letizia v. Executive Coach Auto Repair, Ltd., 623 N.Y.S.2d 327, 327-28 (N.Y. App. Div. 1995). Therefore, Theatre Row could have asserted all grounds under which it should have been entitled to enforce the NRS judgment against H&I's 2% interest in state court.

In fact, in a similar case, the Second Circuit has specifically held that a § 5225(b) special proceeding can serve as a bar to further litigation based on a theory of corporate veil piercing. Ren-Cris Litho, Inc. v. Vantage Graphics, Inc., 1997 U.S. App. LEXIS 3333 (2d Cir. Feb. 24, 1997) (unpublished). That plaintiff argued that "its present suit to enforce a judgment against Defendants through a corporate veil-piercing theory is not barred by a prior state court proceeding, because the present claim could not have been asserted in the state court proceeding." Id. at *2. The Second Circuit affirmed the district court's dismissal on the ground of res judicata:

> [Plaintiff]'s present lawsuit arises from the same facts as its state turn-over proceeding, and merely asserts a new legal theory--veil piercing (now) as opposed to fraudulent conveyance (then)--to obtain the identical monetary relief against the same defendants. There is no doubt that [plaintiff]'s suit is barred by res judicata unless (as the district court noted) there were 'formal barriers' that prevented [plaintiff] from bringing its veil-piercing claim in the turn-over action. This is the question on which the district court sought supplemental briefing; the finding that 'there was no formal barrier to [plaintiff] bringing its veil-piercing claims in the prior special proceeding' led the district court to dismiss [plaintiff]'s claim under res judicata. We affirm that dismissal because we agree that no formal barriers precluded [plaintiff] from pursuing a veil-piercing theory against Defendants in the state court proceeding.

Id. at *7 (citations omitted). Here, Theatre Row encountered no formal barriers preventing it from asserting the objections and defenses it seeks to assert in the bankruptcy action. Rather, as

13

in Ren-Cris, "[Theatre Row's] present lawsuit arises from the same facts as its state turn-over proceeding, and merely asserts a new legal theory--veil piercing [and other objections/defenses] (now) as opposed to fraudulent conveyance (then)--to obtain the identical monetary relief against the same defendants."

Accordingly, both collateral estoppel and *res judicata* precluded Theatre Row from relitigating the enforceability of H&I's 2% interest in Bankruptcy Court. The Bankruptcy Court properly rejected Theatre Row's objections and defenses that challenged the enforceability of H&I's 2% interest – namely, piercing the corporate veil, breach of fiduciary duty, and breach of the implied covenant of good faith – even though they were not specifically asserted in the prior state court litigation.

## CONCLUSION

The Bankruptcy Court's Final Order is AFFIRMED.


Dated: New York, New York
      January 21, 2011

SO ORDERED:

*George B. Daniel*
GEORGE B. DANIELS
United States District Judge

14